# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MELANIE GLANDER,**

        **Plaintiff,**

        v.                                                  **Case No. 19-CV-642**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Plaintiff Melanie Glander alleges that she has been disabled since February 1, 2009 (Tr. 458), and therefore seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 72-73) and upon reconsideration (Tr. 114-15), a hearing was held before an administrative law judge (ALJ) on April 5, 2018 (Tr. 38-61). On July 13, 2018, the ALJ issued a written decision concluding that Glander was not disabled. (Tr. 12-29.) After the Appeals Council denied Glander's request for review on March 1, 2019 (Tr. 1-3), Glander filed this action. All parties have consented to

the full jurisdiction of a magistrate judge (ECF Nos. 3, 4), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since February 1, 2009, the amended alleged onset date." (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Glander has the following severe impairments: "depression, urinary frequency/interstitial cystitis, and polyneuropathy." (Tr. 18.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or

impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Glander has the RFC

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional climbing of stairs and ramps and never climbing ladders or scaffolds. The claimant can frequently balance but only occasionally stoop, kneel, crouch, or crawl. She needs to avoid concentrated exposure to hazards such as unprotected heights and moving mechanical parts. The claimant is limited to understanding, remembering, and carrying out simple instructions and making simple, work-related decisions. She can tolerate occasional interaction with supervisors, coworkers, and the public. The claimant can tolerate occasional

> change in work location. She is unable to work at a strict production rate like the type of rate required to work on an assembly line.

(Tr. 20.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Glander had no past relevant work. (Tr. 27.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that Glander would be able to perform the requirements of representative occupations such as" "checker," "inspector" or "label coder" and therefore was not disabled. (Tr. 28.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

4

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

4. **Analysis**

   4.1. **Urinary Frequency**

   Glander argues that the ALJ erred because, in assessing Glander's RFC, she did not account for Glander's need to frequently use the bathroom. In her decision, the ALJ noted:

   - Glander "testified she makes frequent bathroom trips because of interstitial cystitis." (Tr. 21.)

   - "She testified she uses the bathroom approximately three to four times an hour for bladder issues and more frequently with bowl [sic] issues." (Tr. 21.)

   - "Other symptoms were frequent urination, constant urge to urinate, occasional incontinence, diarrhea, constipation, frequent bowel movements, and urgent need to urinate." (Tr. 22.)

   - Glander's "mother indicated the claimant frequent [sic] went to the bathroom." (Tr. 27.)

5

Moreover, the ALJ explicitly found "urinary frequency" a severe impairment (Tr. 18) and, thus, it significantly limited Glander's ability to do work activities, 20 C.F.R. §§ 404.1522(a), 416.922(a).

Nonetheless, the RFC finding did not account for any increased need to use the bathroom. Nor did the ALJ account for such a need in the hypotheticals she presented to the vocational expert. (Tr. 55-57.) However, Glander's attorney asked the vocational expert what impact being off-task 15 percent of the workday because of the need to use the bathroom would have on employability. (Tr. 58.) The vocational expert testified that being off task 15 percent of the day would preclude all fulltime employment. (Tr. 58.)

If the ALJ concluded that Glander's symptoms were not as severe as she alleged, the ALJ's omission may not have been error. Although the ALJ did not explicitly discuss Glander's alleged urinary frequency, she did say more generally:

> Overall, the evidence of record does not fully support the claimant's allegations of the intensity, persistence, or limiting effects of her impairments. The medical evidence failed to indicate the claimant experienced symptoms that cause work-related functional limitations beyond those described above. The medical evidence shows that claimant only had mild abdominal and suprapubic tenderness as well as occasional abdominal distention, bladder tenderness, and sensory deficits in lower extremities (Exhibits BIF, B3F, B5F, Bl6F, Bl8F, B27F-B29F, B31F, and B32F). Frequently, her labs, cultures, and imaging studies were normal, stable, negative, or unremarkable (Exhibits BIF, B3F, Bl8F, and B25F).

(Tr. 24-25.)

It is not apparent how "only … mild abdominal and suprapubic tenderness as well as occasional abdominal distention, bladder tenderness, and sensory deficits in lower extremities" would tend to suggest that Glander does not have a need to urinate frequently. The ALJ does not cite any medical evidence in the record supporting such a conclusion. As for the fact that "[f]requently, her labs, cultures, and imaging studies were normal, stable, negative, or unremarkable," again, the connection to urinary frequency is not apparent.

Later, in discussing the weight to afford testimony from Glander's mother, the ALJ said:

> The treatment notes showed the claimant complained of depression, anger, fatigue, pain, and frequent bathroom trips. Her providers diagnosed her with depression, interstitial cystitis, and urinary frequency (Exhibits B5F, Bl IF, B8F, Bl3F, Bl6F, B23F, B27F, B29F, and B31F). Nevertheless, the examination and diagnostic work-ups do not support the severity of intensity of the alleged symptoms. Regularly, the labs, cultures, and studies were unremarkable or negative for abnormalities (Exhibits BIF, B3F, Bl8F, and B25F). While she had intermittent abdominal tenderness and distention, tenderness of bladder and suprapubic, the remaining findings were normal (Exhibits BIF, B3F, B5F, Bl6F, Bl8F, B27F-B29F, B31F, and B32F).

(Tr. 27.) Again, the ALJ does not explain how these tests and examinations suggest that Glander would not need to frequently use the bathroom (much less an absence of depression, anger, or fatigue as the ALJ seems to imply). After all, Glander's urinary frequency was attributed to interstitial cystitis, a condition for which there does not appear to be any practical objective diagnostic test. (*See* Tr. 2194 (Sept. 13, 206 progress

7

notes of physician assistant: "Patient asked if there is a diagnostic test for INTERSTITIAL CYSTITIS(IC)/PAINFUL BLADDER SYNDROME (PBS). I explained there is a the [sic] potassium test but this has fallen out of favor as it causes extreme pain in patients with the condition.").)

It was error for the ALJ to not find how Glander's need to frequently use the bathroom would affect her employability. *See Hill v. Astrue*, 295 F. App'x 77, 83 (7th Cir. 2008) (unpublished) (finding that the ALJ erred in failing to account for claimant's need to take frequent bathroom breaks). For example, how long would Glander be off task because of bathroom breaks? If she was required to use the bathroom as frequently as she alleged (Tr. 49), it would appear to preclude all work. *See Edwards v. Colvin*, No. 12 C 10071, 2013 U.S. Dist. LEXIS 163766, at *9 (N.D. Ill. Nov. 15, 2013); *Heflick v. Astrue*, No. 08-C-996, 2009 U.S. Dist. LEXIS 46524, at *28-29 (E.D. Wis. May 20, 2009); *Kopulos v. Barnhart*, 215 F. Supp. 2d 996, 998 (N.D. Ill. 2002). Further, the ALJ was required to include the limiting effects from this symptom in the hypotheticals she presented to the vocational expert. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

To the extent that the absence of any accommodation in the RFC reflects a conclusion that Glander's symptoms were not as severe as she alleged, the ALJ failed to comply with SSR 16-3p and build an accurate and logical bridge between the evidence and her conclusion. As noted above, the closest the ALJ came to giving reasons for not crediting Glander's testimony regarding how often she went to the bathroom is that tests

8

and physical exams were sometimes normal. But the ALJ did not point to any reason to believe that such results were inconsistent with claims of a need to frequently use the bathroom. To the contrary, there is evidence that interstitial cystitis, which medical sources identified as a source of her need to frequently urinate, would not be diagnosable through such measures.

Therefore, remand is required. The court recognizes that the Court of Appeals for the Seventh Circuit has never decided whether a step two finding must be consistent with an RFC finding (*i.e.*, that an ALJ errs if she fails to account for each severe impairment in the RFC). *Guranovich v. Astrue*, 465 F. App'x 541, 543 (7th Cir. 2012). But the fact that the ALJ specifically identified "frequent urination" as a severe impairment yet omitted it from the RFC is just one factor supporting remand. Most significant is the ALJ's failure to explain *why* she did not consider this impairment in her RFC determination.

Glander asks that the court directly award benefits, but the evidence is not so one sided such that a direct award of benefits would be appropriate. (*See, e.g.*, Tr. 2218-19, 2235 (records noting that Glander denied problems with frequent urination).)

### 4.2. Back Pain

Glander also argues that the ALJ erred by failing to consider her alleged back pain. She notes that there is evidence that she suffered from back problems but that the ALJ did not include any limitations for back problems in her RFC finding or even identify her back issues as an impairment (other than to note a benign lump on Glander's back as a

9

non-severe impairment). (ECF No. 11 at 22.) But, as the Commissioner notes in his response, Glander does not point to any evidence suggesting that any problem with her back resulted in limitations greater than those found by the ALJ.

Having failed to present evidence that Glander's back impairments resulted in restrictions greater than those articulated in the ALJ's RFC determination, any error by the ALJ was harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

### 4.3. Fair Hearing

Finally, Glander argues that the ALJ failed to afford her a fair hearing because, shortly before the hearing, Glander was informed that the hearing would be only 15 minutes. She contends that this made her feel rushed and affected her ability to testify. (ECF No. 11 at 23.)

Glander's hearing actually lasted nearly half an hour. There is no evidence that that the ALJ inappropriately curtailed Glander's ability to present her case. Other than saying that she felt rushed, Glander does not point to any prejudice she allegedly suffered as a result of the ALJ's scheduling decision (*e.g.*, evidence she would have presented or questions she would have asked). Consequently, the court does not find this to be a basis for remand.

### 5. Conclusion

The ALJ's failure to account for Glander's need to frequently use the bathroom, or to adequately explain why she was not crediting Glander's reports, requires remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of March, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge